UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 08 B 7918 |
| TAMEKA L. and KELVIN COFFIE, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| | ) | |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 08 A 302 |
| | ) | |
| v. | ) | |
| | ) | |
| TAMEKA L. COFFIE, | ) | Judge Pamela S. Hollis |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court following trial on JPMorgan Chase Bank's ("JPMorgan's") complaint seeking to except Tameka Coffie's debt from discharge pursuant to 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6). For the reasons stated below, judgment is entered for the defendant, Tameka Coffie, on all three counts.

## BACKGROUND

In 2005, Tameka Coffie decided to open a day care center. She incorporated a new business, called A School for Little Educated People, Inc. ("ASLEP"). Coffie did not have a location for the center, so on or about July 27, 2005, she borrowed $216,000 from Harris Bank to purchase real property at 438-442 East 83rd Street. The loan was secured by a mortgage on the property, and Coffie intended to use the building for the day care center.

Coffie then needed money for working capital, to get the business up and running. She went to Chase Bank (now known as JPMorgan Chase Bank, N.A., and referred to throughout this order as JPMorgan) to inquire about a loan. She met with Deavay Tyler, who was working at the branch as a sales manager and who appeared as a witness for Coffie at trial. Coffie told Tyler that she was going to use the loan to pay all expenses connected with the day care center.

Tyler and Coffie discussed the purpose of the loan, which would be for the day care center's buildout and working capital needs. Tyler's understanding was that the loan would be used for the day to day needs of the business. He did not run a credit report on Coffie or ASLEP. Coffie provided JPMorgan with a business plan.

Tyler did not close the loan for JPMorgan. That job was delegated to personal banker Jomo Morgan, who also testified at trial. Morgan's understanding was that the purpose of the loan was to purchase inventory, do basic renovation, and to prepare the building for the day care center. He talked to Tyler about the loan, but remembered nothing about ASLEP's business plan.

On August 12, 2005, the loan closed and ASLEP borrowed $65,000 from JPMorgan. Coffie signed the loan as ASLEP's president, and provided a personal guaranty. The loan was also secured by ASLEP's business assets, inventory, equipment and accounts, which were nonexistent at the time since ASLEP was not an operating business. The bank filed a UCC Financing Statement.

Coffie contacted the City of Chicago and the Department of Children and Family Services in order to begin the legal process of setting up the center. She also contracted with an architectural firm to prepare drawings and plans for the center.

That architect took her money but did not prepare plans. While she took him to court, Coffie hired another architect. He also took her money without preparing plans, so she filed a complaint with the City of Chicago and the Attorney General's office, and then hired a third firm in November 2006.

Unbelievably, that firm also took her money without providing any services. By this point, Coffie was running out of money. She had used the working capital loan from JPMorgan to pay the Harris loan as well as to make payments back to JPMorgan. She had paid thousands of dollars to architects without any drawings to show for it. She also used the JPMorgan funds to pay real property taxes as well as insurance on the building.

Finally, Coffie determined that she would have to sell the building at 438-442 East 83rd Street, and she entered into a listing agreement with a realtor. The building never sold, and was eventually repossessed through a foreclosure proceeding.

Coffie made regular payments on JPMorgan's loan through January 2008. She then contacted JPMorgan to advise the bank that she could no longer make payments on the loan. The balance stood at $47,390.14.

Coffie missed February's payment, due on the 12th of the month. On February 20, 2008, JPMorgan wrote to Coffie to advise her that due to nonpayment, the note was being accelerated. On March 18, 2008, JPMorgan debited her personal checking account in the amounts of $605.24 and $10,543.39, pursuant to her personal guaranty of ASLEP's loan.

Shortly afterward, Coffie and her husband Kelvin filed for relief under Chapter 7 of the Bankruptcy Code. JPMorgan filed this adversary proceeding on May 21, 2008, seeking to declare Coffie's debt under the personal guaranty nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6).

## LEGAL DISCUSSION

JPMorgan seeks to have the court determine that Coffie's debt is nondischargeable under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6). The court will discuss each subsection in turn, mindful of the binding precedent that the plaintiff must prove its case by a preponderance of the evidence, Grogan v. Garner, 498 B.R. 279 (1991), and that exceptions to discharge are narrowly construed in favor of the debtor, In re Chambers, 348 F. 3rd 650, 654 (7th Cir. 2003) (citations omitted).

<u>JPMorgan failed to prove that Coffie made a false representation pursuant to 11 U.S.C. § 523(a)(2)(A).</u>

Under § 523(a)(2)(A), a Chapter 7 debtor is not discharged from a debt to the extent that the debt was obtained by false pretenses, a false representation, or actual fraud.

In order to prove that Coffie's debt is nondischargeable under this subsection, JPMorgan must show that: (1) Coffie obtained money through a misrepresentation; (2) she had an actual intent to defraud JPMorgan; and (3) JPMorgan justifiably relied on that misrepresentation. In re Maurice, 21 F. 3rd 767 (7th Cir. 1994), <u>modified by Field v. Mans</u>, 516 U.S. 59 (1995).

JPMorgan fails on the very first part of this three part test. There was no showing that Coffie obtained these funds by a misrepresentation. She told JPMorgan that she needed the loan in order to open a day care center. With a very credible demeanor, she testified in court that she had every intention of opening such a center. She hired three architects, each of whom in turn took her money but provided nothing. She contacted potential employees and clients.

Unfortunately, the center never opened its doors. But having heard testimony from Tameka Coffie, the court is in no doubt that when she borrowed the money from JPMorgan and told the bank those funds would be used to operate a day care center, she meant it.

JPMorgan focused on the fact that shortly before borrowing the working capital funds in her corporation's name, Coffie purchased a building in her own name and obtained a mortgage from Harris Bank. Much of the money she borrowed from JPMorgan went to pay the mortgage held by Harris.

This is not the smoking gun that JPMorgan sets it up to be. Coffie purchased that building for her day care center business. Since the center was not yet up and running, she used the working capital funds she borrowed from JPMorgan to pay the mortgage. There is nothing sinister about doing so.

JPMorgan could have run a credit check on Coffie, or required a financial statement from her, and upon discovering the real property she owned, could have taken a second position behind Harris. It took none of these actions, and now blames Coffie for doing exactly what she set out to do – attempting to open a day care center.

Perhaps JPMorgan would have been less concerned if Coffie had charged her corporation rent for the building she owned personally, and then used her working capital funds to pay the rent. But that is just a matter of semantics. A day care center needs a physical location. Coffie purchased such a location, something she could not have done with just the $65,000 working capital loan. She then used her corporation's working capital funds to pay for that location while she tried to open the business.

In its closing argument, JPMorgan cited In re Logan, 327 B.R. 907 (Bankr. N.D. Ill. 2005), arguing that the facts were similar and required the same result. In Logan, the credit union's theory was that the debtor "duped it into granting her an unsecured loan even though they bargained for a secured loan," id. at 913, because she failed to purchase a car with the funds advanced. The debtor testified to a convoluted story of a car purchased from a traveling dealer (whom she eventually married), losing the title, and eventually abandoning the car on the side of the road. Judge Cox found Logan's debt to be nondischargeable.

Logan does not compel a similar result, because the facts in Logan are far different than those in the instant case. Coffie consistently testified that she intended to open a day care center, and she provided proof of her efforts to do so. She used the funds loaned to her by JPMorgan to pay expenses associated with the business, including the costs of the center's physical location. At no time was her story far-fetched or hard to believe. Compare Logan, 327 B.R. at 914-915 ("Logan produced nothing other than the self-serving oral assertions of herself and a man who appeared to be at arm's length (but who was in fact her husband by the time of trial). The evasive conduct and inaction was not limited to the trial setting.").

For all of the reasons stated above, JPMorgan has not proved by a preponderance of the evidence that Coffie made a false representation, and judgment will be entered for the defendant on Count I.

### JPMorgan failed to prove that Coffie committed larceny under 11 U.S.C. § 523(a)(4).

In Count II of its complaint, JPMorgan alleges that Coffie's debt should be nondischargeable under 11 U.S.C. § 523(a)(4) because she converted the bank's funds for her own use and, by doing so, committed larceny.

The Seventh Circuit tells us that "[l]arceny is proven for § 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner." Matter of Rose, 934 F. 2nd 901, 903 (7th Cir. 1991) (citation omitted). A later case in this district noted that with larceny, "there is a requirement that felonious intent exists at the time of the taking." In re House, 2007 WL 2126260 (Bankr. N.D. Ill. July 18, 2007).

JPMorgan cannot prevail on this count. There was absolutely no showing that Coffie possessed felonious intent at any time during the relevant period. She borrowed the funds from JPMorgan in order to open a day care center. She attempted to do so for over a year. When she finally ran out of money, she contacted the bank. Once she missed a payment, however, JPMorgan set off over $11,000 in her checking account. Coffie filed bankruptcy shortly thereafter. There was no felonious intent lurking behind her actions.

The court had ample opportunity to observe Coffie's demeanor, both on the witness stand and when she acted as her own attorney. The court has no doubt that Coffie is an honest but unfortunate debtor. JPMorgan failed to prove that Coffie committed larceny, and judgment will be entered for the defendant on Count II.

### JPMorgan failed to prove that Coffie caused a willful and malicious injury to JPMorgan's property under 11 U.S.C. § 523(a)(6).

Pursuant to § 523(a)(6), a debt is nondischargeable if it is for "willful and malicious injury by the debtor to another entity or to the property of another entity." The

Supreme Court has clarified the meaning of this subsection, stating that "only acts done with the actual intent to cause injury" come within its scope. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).

In order to prevail on this count, JPMorgan must prove by a preponderance of the evidence that: (1) Coffie caused an injury; (2) her actions were willful; and (3) her actions were malicious. See In re Cole, 378 B.R. 215, 226 (Bankr. N.D. Ill. 2007).

This subsection was intended to prevent debtors from discharging debts based on intentional torts. Kawaauhau, 523 U.S. at 61-62. Although that can include fraud, there has been no showing that Coffie committed any sort of intentional tort.

Coffie used JPMorgan's funds to pay the costs associated with starting up her day care business, including the cost of the physical location such as her mortgage payment and real property taxes. While JPMorgan may have been injured to the extent that its loan was not repaid in full, it has not proved that Coffie acted with malice or with the intent to cause injury.

Judgment will be entered for the defendant on Count III.

## CONCLUSION

Having observed Coffie as she testified and as she acted as her own attorney over the course of several hours, the court has no doubt that she borrowed these funds from JPMorgan with the intent of opening a day care center. She told the bank that she would use the money to pay all costs associated with the business, and that included the cost of owning a physical location. Not only did JPMorgan fail to prove that Coffie made a misrepresentation, it also made no showing that she had any fraudulent or malicious intent.

- 8 -

Judgment will be entered for the defendant, Tameka Coffie, on all three counts of the complaint. Her debt to JPMorgan is dischargeable. Plaintiff's request for attorney's fees is denied.

Date: __JUN 1 2 2009__

*Pamela S Hollis*
PAMELA S. HOLLIS
United States Bankruptcy Judge